# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-18

**STATE OF LOUISIANA**

**VERSUS**

**UGANON SHA RICHARD**

***********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, DOCKET NO. CR-2019-2230
HONORABLE ERROL DAVID DESHOTELS, JR., DISTRICT JUDGE

***********

**SYLVIA R. COOKS**
**CHIEF JUDGE**
***********

Court composed of Sylvia R. Cooks, Chief Judge, Billy Howard Ezell and D. Kent Savoie, Judges.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART AND VACATED IN PART.**

**John Keith Richardson**
**Allen Parish District Attorney's Office**
**P.O. Box 839**
**Oberlin, LA  70655**
**(337) 639-2641**
**COUNSEL FOR APPELLEE:**
    State of Louisiana

**Sherry Waters**
**Louisiana Appellate Project**
**P.O Box 58769**
**New Orleans, LA 70158-8769**
**(504) 723-0284**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    Uganon Sha Richard

**COOKS, Chief Judge.**

## FACTS AND PROCEDURAL HISTORY

On July 3, 2019, pursuant to a search warrant, police raided the home of Defendant, Uganon Sha Richard. During the raid, authorities seized 1.54 grams of methamphetamine, 11.34 grams of cocaine, 3.39 grams of marijuana, and 19.44 grams of synthetic marijuana. Defendant's home was in a posted drug-free zone.

Defendant was charged by bill of information with possession with intent to distribute methamphetamine, a violation of La.R.S. 40:967(A)(1); possession with intent to distribute cocaine, a violation of La.R.S. 40:967(A)(1); possession with intent to distribute marijuana and/or synthetic derivatives, a violation of La.R.S. 40:966(A)(1); violating a controlled dangerous substance law in a drug-free zone, a violation of La.R.S. 40:981.3(A)(1); obstruction of justice, a violation of La.R.S. 14:130.1(B)(2); child endangerment, a violation of La.R.S. 40:967(B)(2)(b); and possession of drug paraphernalia, in violation of La.R.S. 40:1023(C) and 40:1025. Defendant pled guilty to possession with intent to distribute less than 28 grams of methamphetamine, possession with intent to distribute less than 28 grams of cocaine, possession with intent to distribute less than 2.5 pounds of marijuana/synthetic marijuana, obstruction of justice, and violation of the controlled dangerous substances law in a drug-free zone, an enhancement of the first three charges.

Defendant was originally sentenced to nine years at hard labor on each of his convictions of possession with intent to distribute methamphetamine, possession with intent to distribute cocaine, possession with intent to distribute marijuana, and for his violation of a controlled dangerous substance law in a drug-free zone. For obstruction of justice, Defendant was sentenced to five years at hard labor. The State filed a habitual offender bill seeking to have Defendant declared a fourth or subsequent offender. A habitual offender hearing was held and by written judgment, the court found Defendant is a fourth or subsequent felony offender.

The court vacated Defendant's original sentences and sentenced him as a fourth or subsequent felony habitual offender on each of his five convictions to twenty years to run concurrently with each other and any other time he may be serving.

Defendant now appeals, asserting the State failed to prove he was a multiple offender because it failed to prove the applicable discharge dates or that less than five years of correctional supervision had passed between convictions. Defendant also asserted the trial court erred in imposing excessive sentences in this case.

## ANALYSIS

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is an error patent that requires we vacate the sentences imposed on all three counts of possession with the intent to distribute controlled dangerous substances (CDS) and one count of violating the CDS law in a drug-free zone (La.R.S. 40:981.3). Further, the case is remanded for resentencing on those counts.

The trial court erred in imposing a separate sentence for Defendant's violation of the CDS law within a drug-free zone instead of imposing an enhanced sentence on each count of possession with intent to distribute a CDS. Defendant was charged with three counts of possession with the intent to distribute controlled dangerous substances. In a separate count, the State charged Defendant with violating the provisions of La.R.S. 40:966 through 970 of the Uniform CDS Law while in a drug-free zone, a violation of La.R.S. 40:981.3(A)(1). At Defendant's guilty plea proceeding, the trial court asked if the violation of La.R.S. 40:981.3 was a separate charge to which Defendant must plead guilty. Defense counsel responded, "[N]o, it is technically not[;] it is just gonna [sic] be the enhancement on the first three counts he pled guilty to." Before accepting his guilty plea on counts one through three, the trial court asked Defendant if he acknowledged the "applicability of the violation of

3

the CDS law in a drug free zone[.]" Defendant responded in the affirmative. However, at both the original sentencing and the habitual offender sentencing, the trial court imposed sentences on all three counts of possession with the intent to distribute CDS and imposed a separate sentence for "violation of CDS laws in a drug free zone."

Louisiana Revised Statutes 40:981.3, in pertinent part, states the following:

A. (1) Any person who violates a provision of R.S. 40:966 through 970 of the Uniform Controlled Dangerous Substances Law while on any property used for school purposes by any school, within two thousand feet of any such property, or while on a school bus, shall, upon conviction, be punished in accordance with Subsection D of this Section.

(2) Any person who violates a provision of R.S. 40:966(A), 967(A), 968(A), 969(A), or 970(A) while on property used as a drug treatment facility or within two thousand feet of any such property, when included within an area marked as a drug-free zone pursuant to R.S. 40:1058.10, shall, upon conviction, be punished in accordance with Subsection D of this Section.

(3)(a) Any person who violates a provision of R.S. 40:966 through 970 of the Uniform Controlled Dangerous Substances Law while on any religious building property, public housing authority property, child day care center property, or within two thousand feet of any such property, if the area is posted as a drug free zone, shall, upon conviction, be punished in accordance with Subsection D of this Section.

. . . .

D. (1) Whoever violates a provision of this Section shall be punished by the imposition of the maximum fine and be imprisoned for not more than one and one-half times the longest term of imprisonment authorized by the applicable provisions of R.S. 40:966 through 970.

(2) A sentence imposed for a violation of the provisions of this Section shall not be subject to parole, probation, or suspension of sentence to the extent that the minimum sentence for a violation of a felony provision of R.S. 40:966 through 970 is not subject to parole, probation, or suspension of sentence.

It is clear from the wording of the above provision that La.R.S. 40:981.3 does not have a stand-alone penalty provision. Rather, the possible penalty is dependent on the applicable CDS offense for which the defendant is charged. In this case,

4

Defendant pled guilty to violating three different CDS provisions while being within a drug-free zone. Each one of these offenses is punishable by imprisonment from one to ten years with or without hard labor and a maximum fine of $50,000.00. With the application of La.R.S. 40:981.3, each offense was punishable by the maximum fine of $50,000.00 and imprisonment with or without hard labor from two to fifteen years, with two years to be served without benefit of parole, probation, or suspension of sentence.

Ultimately, Defendant was adjudicated and sentenced as a fourth habitual offender as to each count. The habitual offender penalty provision applicable to Defendant is La.R.S. 15:529.1(A)(4)(b):

> If the fourth felony and no prior felony is defined as a crime of violence under R.S. 14:2(B) or as a sex offense under R.S. 15:541, the person shall be imprisoned for not less than twenty years nor more than twice the longest possible sentence prescribed for a first conviction. If twice the possible sentence prescribed for a first conviction is less than twenty years, the person shall be imprisoned for twenty years.

Section G of La.R.S. 15:529.1 states that any habitual offender sentence must be served at hard labor without benefit of probation or suspension. The restriction of parole eligibility, however, is that which is provided for in the reference statute. *State v. Ford*, 16-869 (La.App. 3 Cir. 4/19/17), 217 So.3d 634, *writ denied*, 17-936 (La. 4/6/18), 239 So.3d 829 (*citing State v. Tate*, 99-1483 (La. 11/24/99), 747 So.2d 519). Accordingly, the habitual offender sentencing range for each of the CDS offenses within a drug free zone is imprisonment for twenty to thirty years at hard labor, without benefit of probation or suspension of sentence, and with two years to be served without benefit of parole, probation, or suspension of sentence.

Under the plain wording of La.R.S. 40:981.3(D), the trial court should have imposed a sentence for each count of possession with the intent to distribute a CDS, with each sentence being imposed under the penalty provision of La.R.S. 40:981.3, in conjunction with the penalty provision for each CDS violation. Consequently,

each sentence imposed for possession with the intent to distribute a CDS (counts one through three) and the sentence imposed for a violation of the CDS law in a drug-free zone (La.R.S. 40:981.3) is vacated and the case remanded for the trial court to resentence Defendant accordingly.

## *Defendant's Assignments of Error*

In his first assigned error, Defendant contends the State failed to prove his multiple offender status because it failed to prove his discharge dates which were required to show that less than five years lapsed between offenses for purposes of La.R.S. 15:529.1(C)(1).

Louisiana Revised Statutes 15:529.1(C)(1) provides in pertinent part:

[T]he current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than five years have elapsed between the date of the commission of the current offense or offenses and the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, for the previous conviction or convictions, or between the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, for each preceding conviction or convictions alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided in this Paragraph, any period of parole, probation, or incarceration by a person in a penal institution, within or without the state, shall not be included in the computation of any of the five-year periods between the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, and the next succeeding offense or offenses.

Louisiana Revised Statutes 15:529.1 provides:

J. For purposes of this Section, "correctional supervision" means any period of parole, probation, or incarceration of a person in a penal institution, either within the state of Louisiana or outside of the state.

In *State v. Bourque*, 14-809, pp. 2-3 (La.App. 3 Cir. 12/10/14) (unpublished opinion), this court discussed the cleansing period and how periods of parole are to be considered in determining whether that period has lapsed:

In *State v. Thomas,* 05–2210, p. 10 (La.App. 1 Cir. 6/9/06), 938 So.2d 168, 176, *writ denied,* 06–2403 (La.4/27/07), 955 So.2d 683, the first circuit stated the following about the above statutory provision:

6

The statutory revision makes it clear that each step of the defendant's multiple offender ladder must be examined to determine whether the State may link his first conviction to his second, his second conviction to his third, and his third conviction to his fourth to charge the defendant as a fourth felony offender.

In "linking" up the defendant's prior convictions, the date that a defendant is actually discharged from state custody and supervision is the date upon which the cleansing period begins. *State v. Boutte,* 10–928, p. 3 (La.App. 3 Cir. 3/9/11), 58 So.3d 624, 627, *writ denied,* 11–689 (La.10/7/11), 71 So.3d 314 (quoting *State v. Boykin,* 29,141 (La.App. 2 Cir. 1/31/97), 688 So.2d 1250). While a defendant is on parole, he is still in state custody. *State v. Vincent,* 387 So.2d 1097 (La.1980). Thus, the cleansing period does not begin until the defendant's parole ends.

In the present case, the State charged Defendant with three previous felony convictions: (1) possession of cocaine (conviction date October 2, 2003); (2) false impersonation of a police officer (conviction date December 11, 2003); and (3) distribution of dihydrocodeinone (conviction date February 22, 1990). The commission date of the offense for which Defendant's sentence was enhanced (failure to renew registration as a sex offender) was November 19, 2010. Since ten years did not lapse between Defendant's commission of failure to renew his registration (November 19, 2010) and Defendant's most recent prior conviction (false impersonation of a police officer—December 11, 2003), the State was not required to prove the date on which Defendant was discharged for serving his sentence for falsely impersonating a police officer. *See Boutte,* 58 So.2d 624. Additionally since false impersonation of an officer and the next previous conviction (possession of cocaine) occurred within a few months of each other (December 11, 2003 and October 3, 2003, respectively), the State was not required to prove Defendant's discharge date for the possession of cocaine conviction. It is clear that ten years did not lapse between any of these convictions.

Thus, the only remaining "link" in the ladder is the link between the discharge date for his first previous conviction (distribution of dihydrocodeinone-conviction date February 22, 1990) and the commission of Defendant's next previous conviction (possession of cocaine—conviction date October 2, 2003). As the State notes in its brief, it introduced a letter from the Department of Public Safety and Corrections dated June 26, 2012, which shows that Defendant's parole for distribution of dihydrocodeinone (conviction date February 22, 1990) ended on June 14, 1999. This exhibit was introduced at Defendant's first habitual offender hearing without any objection. At Defendant's most recent habitual offender proceeding, the State asked the trial court to take judicial notice of the first habitual offender proceeding, which the trial court did without any objection from Defendant. It is apparent from the record that less than ten years lapsed between Defendant's June 14, 1999, discharge date for distribution of

dihydrocodeinone and Defendant's conviction for possession of cocaine (October 2, 2003); thus, the State satisfied its burden of proving that less than ten years lapsed between these two previous offenses. Accordingly, the period between each of the "links" in the "ladder" were each less than ten years.

In the present case, there are four prior offenses at issue, those being 01-623, 05-1514, 11-3335, and 18-1800. In brief, Defendant states that in 01-623, he was discharged for time served on November 15, 2004, then was subsequently arrested in 05-1514 on February 22, 2005. According to Defendant, there was no evidence of his release in 05-1514, and he was arrested on January 6, 2011, for the offense in 11-3335. He was subsequently released on good time on October 3, 2016, and was arrested in 18-1800 on May 17, 2017. He was released on good time for the offense in 18-1800 on February 14, 2019, and the current offense was committed on or about July 3, 2019. Because the subsequent arrest dates (and thus, the commission dates) fall within five years of the previous release dates except for the 2005 offense (for which Defendant contends there was no evidence of his release presented), Defendant's challenge on appeal is limited to only this cleansing time period.

On October 12, 2005, Defendant was sentenced in 05-1514 for possession with intent to distribute methamphetamine to ten years with the first five years to be served without benefit of parole, probation, or suspension of sentence.[1] The date of the commission of the 2011 offense was January 6, 2011. There were approximately three months between the expiration of the "without benefits" five-year term of the 2005 sentence and the commission of the 2011 offense. When Defendant entered his guilty plea to and was sentenced for the 2011 offense on July 12, 2012, the court ordered the ten-year sentence to run concurrently with any time Defendant was "backing up" which defense counsel informed the court was in docket number 05-1514.

---

[1] Defendant was also sentenced to ten years for possession with intent to distribute cocaine. The judge ordered two years of that sentence to be served without benefit of parole, probation, or suspension of sentence with the two sentences to run concurrently.

8

Additionally, Christopher Bertrand of the Ville Platte District of the Louisiana Department of Probation and Parole supervised Defendant during his period of "good time parole" which falls under the Department of Corrections. During his testimony, the State introduced Exhibit 2, the pen pack of Defendant's Department of Corrections records. He explained that this system is called CAJUN, and it contains a defendant's docket numbers, the location, revocation date, the offenses, the commission dates, and the convictions dates. In using this system to prepare the presentence investigation report, Mr. Bertrand came across 2018-1800, 2011-F-3335, 2005-1514, and 2001-F-623. Defendant's DOC number, which is assigned upon a first felony conviction, appeared on the previous docket numbers as well as the most recent docket number, 2019-2230. At the time of the conviction for the current offenses, Defendant was still on supervision for CLA 29748, ALN 2005-F-1514, ALN 2011-3335, and ALN 18-1800, and the new conviction caused an automatic revocation of parole on all "those matters." Referring to his records, Mr. Bertrand testified that in 05-1514, Defendant was sentenced on October 12, 2005, to ten years at hard labor for possession with intent to distribute cocaine, and ten years at hard labor for possession with intent to distribute methamphetamine, to run concurrently. For 11-3335, Defendant was sentenced on July 12, 2012, to ten years at hard labor. Mr. Bertrand did not know when supervision ended for each of these sentences. He explained that DOC does the time calculations and that "[w]hen [Defendant] was eligible to be off, or his parole term, parole supervision date would be on his diminution of sentence" and that appeared on the second page of the pen pack. This page shows that for docket numbers 05-1514, 11-3335, and 18-1800, Defendant was released on diminution of sentence as if on parole on February 14, 2019. On redirect examination, Mr. Bertrand explained that Defendant was still being supervised in 2019 for his 2005 conviction.

Therefore, the five-year cleansing period did not lapse between the end of Defendant's supervision on the 2005 offense and the commission of the 2011 offense. Accordingly, this assignment of error has no merit.

Defendant's second assigned error asserts his sentences are excessive and as such should be vacated. As discussed in the error patent section above, we have determined all Defendant's sentences must be vacated except for the obstruction of justice sentence. Thus, the obstruction of justice sentence is is the only sentence at issue in this assignment of error.

For obstruction of justice, Defendant pled guilty pursuant to La.R.S. 14:130.1(B)(2), which carries a sentence of imprisonment for not more than twenty years. As a fourth or subsequent offender, Defendant faced a sentence of twenty years to life imprisonment; thus, he received the minimum sentence. Defense counsel presented argument for imposition of a sentence below the mandatory minimum based on Defendant's lack of a violent history. Defendant testified at the sentencing hearing that he was on work release and had been employed as a chef for nine months. He confirmed that incarceration for a significant amount of time would cost him this job. Letters submitted to the court by both the kitchen manager and general manager of the restaurant provided very positive feedback about Defendant and indicated their intent to offer him a more permanent position upon release.

The court noted that none of the prior offenses were violent offenses or sex offenses and that Defendant had been very cordial and pleasant in all proceedings. However, the court pointed out that although he had found Defendant to be a fourth or subsequent felony offender per the habitual offender statute, this was actually his eighth felony conviction. Under those circumstances, the court indicated that it did not feel it was appropriate to deviate below the minimum statutory requirement. At the close of the sentencing proceeding, defense counsel objected.

10

In *State v. Williams*, 16-140, pp. 19-20 (La.App. 3 Cir. 9/28/16), 201 So.3d 379, 394-95 (alterations in original), the defendant was sentenced to the mandatory minimum sentence of twenty years for possession with intent to distribute a Schedule II controlled dangerous substance as a third felony habitual offender. In finding his sentence was not excessive, this court stated:

> Article 1, § 20 of the Louisiana Constitution of 1974, prohibits "cruel, excessive, or unusual punishment." A sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. *State v. Sepulvado*, 367 So.2d 762 (La.1979); *State v. Naquin*, 527 So.2d 601 (La.App. 3 Cir.1988). To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981); *State v. Everett*, 530 So.2d 615 (La.App. 3 Cir.1988), *writ denied*, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. *State v. Howard*, 414 So.2d 1210 (La.1982).

*State v. Walker*, 96–112, pp. 3–4 (La.App. 3 Cir. 6/5/96), 677 So.2d 532, 534–35, *writ denied*, 96–1767 (La. 12/6/96), 684 So.2d 924.

> A trial court must look at the particular circumstances of the case and the defendant's background in order to impose a sentence that is suited for him. On review, the issue is not whether another sentence would have been more appropriate; rather, it is whether the trial court abused its discretion.

*State v. Beverly*, 03–1348, p. 2 (La.App. 3 Cir. 3/3/04), 867 So.2d 107, 110 (footnotes omitted).

> Mandatory minimum sentences imposed on multiple offenders under the Habitual Offender Law are presumed to be constitutional, and a defendant bears the burden of rebutting that presumption. *State v. Ladd*, 13-1663, p. 3 (La.App. 4 Cir. 7/2/14), 146 So.3d 642, 644, *vacated and remanded on other grounds*, 14–1611 (La. 3/27/15), 164 So.3d 184, (citing *State v. Johnson*, 97-1906, pp. 5–6 (La. 3/4/98), 709 So.2d 672, 675, and *State v. Short*, 96–2780, p. 8 (La.App. 4 Cir. 11/18/98), 725 So.2d 23, 27). To rebut the presumption that a mandatory

minimum sentence is constitutional, a defendant must clearly and convincingly show that:

> [he] is exceptional, which in this context means that because of unusual circumstances, the defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

*Id*. (quoting *State v. Lindsey*, 99–3302, p. 5 (La. 10/17/00), 770 So.2d 339, 343).

> "[D]epartures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." *Lindsey*, p. 5, 770 So.2d at 343 (quoting *Johnson*, 97–1906, p. 8, 709 So.2d at 677).

*State v. Hall*, 14–1046, p. 15 (La.App. 4 Cir. 5/13/15), 172 So.3d 61, 70.

In brief, Defendant's total argument consists of an assertion that his twenty year sentence and his five year sentence are "constitutionally excessive as they make no contribution to acceptable goals of punishment and are nothing more than the purposeless imposition of pain and suffering and are grossly out of proportion to the severity of the crime." Defendant does not explain how the mandatory sentence is excessive in his case or in what way he is exceptional or a victim of the legislature's failure to assign a sentence that is meaningful to his circumstance. Thus, Defendant has failed to meet his burden of proof. There is no merit to this assignment of error.

Likewise, in *State v. Fleming*, 04-1218, pp. 10-12 (La.App. 5 Cir. 4/26/05), 902 So.2d 451, 459-60, *writ denied*, 05-1715 (La. 2/10/06), 924 So.2d 161 (footnote omitted), the court stated:

> There must be substantial evidence to rebut the constitutionality presumption. "The trial court may not depart from the legislatively mandated minimum simply because of some subjective impression or feeling about the defendant." *State v. Bell*, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, 927, *writ denied*, 98-0792 (La.9/16/98), 721 So.2d 477. It has been strongly emphasized by the Louisiana Supreme Court that downward departures from a mandatory minimum sentence should occur in rare situations. *State v. Lindsey*, 99-3256 c/w 99-3302 (La.10/17/00), 770 So.2d 339, 343, *cert. denied*, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001). The Legislature maintains the sole authority to define criminal conduct and provide penalties for that conduct. *State v. Johnson*, 709 So.2d at 675 (citations omitted). "[I]t is apparent that the Legislature's determination of an appropriate minimum sentence should be afforded great deference by the

judiciary." Although courts have the power to declare these sentences excessive, this should only be done when the court is clearly and firmly convinced that the minimum sentence is excessive. *Id.* at 676. A trial judge cannot rely solely upon the non-violent nature of the present crime or of previous crimes to justify the rebuttal of the constitutionality presumption. *Id.* As stated in *Johnson,*

> Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law.

*Id.* at 677.

Defendant was sentenced to the mandatory minimum of twenty years without the benefit of parole, probation, or suspension of sentence after being adjudged a fourth felony offender. Defendant's predicate convictions were for robbery, felon in possession of a firearm, and burglary.

. . .

In light of defendant's extensive criminal history, we find that the trial court did not abuse its discretion in sentencing defendant. The defendant did not offer sufficient evidence to rebut the presumption that his enhanced sentence was constitutional and not excessive. The defendant argues that a twenty-year sentence for possessing a glass tube containing cocaine residue is excessive since he is accused of only smoking from the glass tube, not beating or stabbing someone with it. He further argues that such a sentence for such a small amount of cocaine is a needless imposition of pain and suffering. In *State v. Johnson,* 03-903 (La.App. 5 Cir. 12/9/03), 864 So.2d 645, 653, this Court, relying on *State v. Robinson,* concluded that defendant had not made a showing of exceptional circumstances to justify a downward departure from the minimum sentence mandated by the Habitual Offender Statute when the defendant sought a downward departure on the grounds that the amount of narcotics (.01 grams) was small.

This Court has found that a twenty-year sentence for a defendant convicted of possession of cocaine and subsequently adjudicated a fourth felony offender is not excessive. *See, State v. Bailey,* 875 So.2d 949. In this case, defendant has failed to prove that a downward deviation from the mandatory minimum sentence is warranted. Accordingly, we find that the enhanced sentence imposed is not excessive.

We find Defendant has not established that he is exceptional or a victim of the "legislature's failure to assign a sentence meaningful to his circumstance" to justify a downward departure from the minimum sentence mandated by the Habitual

Offender Statute. *Williams*, 201 So.3d at 395. Accordingly, this assignment of error has no merit.

## DECREE

For the foregoing reasons, Defendant's convictions and his habitual offender sentence for obstruction of justice are affirmed. The three sentences imposed for possession with the intent to distribute CDS (counts one through three) and the sentence imposed for a violation of the CDS law within a drug-free zone are vacated and the case remanded for resentencing on those counts. The trial court is instructed to impose a sentence for each count of possession with intent to distribute a CDS, with each sentence being imposed under the penalty provision of La.R.S. 40:981.3, in conjunction with the applicable penalty provision for each CDS violation.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART AND VACATED IN PART.**